CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 27 2006

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| DANA D. JACKSON, | ) |
| | ) Civil Action No. 5:05CV00066 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) By: Honorable Glen E. Conrad |
| | ) United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff was not under a disability at any time prior to the final decision of the Commissioner. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 400 (1971).

The plaintiff, Dana D. Jackson, was born on October 20, 1963, and eventually completed the tenth grade in school in a special education setting. Mrs. Jackson has worked as a counter person in fast food restaurants and as a cashier. She last worked on a regular basis in 2002. On December 18, 2002, plaintiff filed applications for disability insurance benefits and supplemental security income benefits.

Mrs. Jackson alleged that she became disabled for all forms of substantial gainful employment on March 30, 2002, due to pain in her feet, stiffness, inability to walk or run as in the past, and surgical residuals. She now maintains that she has remained disabled to the present time. As to her application for disability insurance benefits, the record reveals that plaintiff met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See, gen., 42 U.S.C. §§ 414 and 423.

Mrs. Jackson's claims were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated August 28, 2004, the Law Judge also denied plaintiff's claims for benefits. Upon appeal to the Social Security Administration's Appeals Council, the Appeals Council remanded to the case to the Law Judge for further development and consideration.

Following conduct of a supplemental administrative hearing, the Law Judge rendered a second decision on June 22, 2005. While the Law Judge failed to make explicit findings as to the nature or diagnoses of plaintiff's physical and mental impairments, the Law Judge's summary of the evidence identifies a variety of problems, including plantar fascitis, degenerative disc disease, myofacial pain syndrome, depression, and anxiety. Because of her various impairments, the Law Judge ruled that Mrs. Jackson is disabled for her past relevant work roles. However, the Law Judge held that plaintiff retains sufficient functional capacity to perform simple repetitive work at the light and sedentary levels of exertion. The Law Judge also noted that Mrs. Jackson can only tolerate low stress and limited social contact. He also found that she can lift only 20 pounds occasionally and 10 pounds frequently, and that she is limited to sitting and standing about six hours each in a regular work day. Given such a residual functional capacity, and after considering Mrs. Jackson's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge determined that plaintiff remains capable

of performing several specific light and sedentary work roles which exist in significant number in the national economy. Accordingly, the Law Judge ultimately concluded that Mrs. Jackson is not disabled, and that she is not entitled to benefits under either federal program. See, gen., 20 C.F.R. §§ 404.1520(g) and 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mrs. Jackson has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. Mrs. Jackson has suffered from a variety of physical problems, especially during the early 2000s. She has been treated for plantar fascitis, degenerative disc disease, myofacial pain syndrome, umbilical and abdominal hernias, kidney stones, residuals of foot and hernia surgeries, and, more recently, fibromyalgia. However, with the exception of Dr. Scott Seaton, the physician who has more recently diagnosed and treated plaintiff's fibromyalgia, no doctor has suggested that Mrs. Jackson's physical problems are so severe as to contribute to an overall disability. In finding plaintiff totally disabled, Dr. Seaton identified depression and anxiety as plaintiff's most prevalent symptoms. The court believes that the medical record fully

3

supports the Law Judge's finding that Mrs. Jackson's <u>physical</u> problems do not prevent performance of light and sedentary work roles in which she is not required to frequently lift more than 10 pounds or to sit or stand for more than six hours in an eight hour work day.

As suggested in the preceding paragraph, the record reflects that plaintiff's emotional symptomatology presents a much closer question in terms of Mrs. Jackson's overall functional capacity. Dr. Seaton's finding of disability is premised largely on plaintiff's depression and anxiety. More recently, several mental health specialists have also confirmed the existence of major depressive disorder. Dr. Laury Goolsby began treating Mrs. Jackson in June 2003. Dr. Goolsby, a clinical psychologist, determined that plaintiff had suffered from a single, severe major depressive disorder without psychotic features. He noted that she had not previously been taking psychotrophic medications. He estimated her GAF as 45.[1] Dr. Goolsby attributed some of plaintiff's problems to situational stressors. Based on Dr. Goolsby's recommendations, a treating physician prescribed medication for plaintiff's emotional dysfunction. Dr. Goolsby continued to see Mrs. Jackson. At a follow-up session on August 19, 2003, Dr. Goolsby referred plaintiff to the Department of Rehabilitation Services for assistance in obtaining employment. (TR 410-11).

Following the administrative remand of this case, Mrs. Jackson was referred by the Social Security Administration to Dr. Nadia Webb, a neuropsychologist, for a mental health evaluation. In a report dated March 29, 2005, Dr. Webb also diagnosed major depressive disorder, dysthymia, and personality disorder. Based on her clinical observations and psychological testing results, the neuropsychologist offered the following assessment:

---

[1] The global assessment of functioning, or GAF, is used to report the clinician's judgment of the subject's overall level of functioning. A score of between 41 and 50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning. American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision. Washington, D.C., American Psychiatric Association, 2000. P. 44-48.

4

> Her depression appears to be longstanding. She reports that it is lifelong; however, it appears to have worsened with her health problems. For this reason, she is given both the diagnosis of dysthymia as well as a superimposed major depression currently. Her behavioral difficulties getting along with others are likely to impact her ability to work with co-workers, supervisors or in the public; however, they do not appear to be disabling. She reportedly has difficulty in tolerating stress and would probably be best employed in a less stressful work setting than most. It is difficult to integrate her MMPI findings since the results were invalid.
>
> At this point, her psychiatric difficulties as reported appear to be not disabling in and of themselves since she reports that she has dealt with this problem for decades. Her health problems appear to be the primary reason for her disability request, and those are out of my purview. It would be interesting to find out of she does in fact have sleep apnea because that could account for some of her depressed mood as well as the cognitive problems that she has reported. (Use of a CPAP should alleviate that. Posttreatment for sleep apnea, there is often mild residual cognitive difficulty; however, it generally places the individual within normal limits.) Lastly, Ms. Jackson reported that she was in a special education setting and therefore it is difficult to figure out whether or not her Mini-Mental Status scores reflect a decline in functioning.

(TR 538). Dr. Webb also completed a medical assessment of plaintiff's mental ability for work-related activities. Dr. Webb noted moderate limitation in plaintiff's ability to understand, remember, and execute detailed or complex instructions. The neuropsychologist also described moderate limitations in Mrs. Jackson's ability to deal with work pressures. Otherwise, Dr. Webb noted no more than mild limitations in terms of specific, work-related emotional components.

The Law Judge gave greater weight to the findings of Dr. Webb than those of Dr. Seaton. The court must conclude that the Law Judge's assessment is supported by substantial evidence. Dr. Seaton is an internist while Dr. Webb is a neuropsychologist. It is reasonable to believe that Dr. Webb would be better positioned to evaluate the vocational impact of plaintiff's nonexertional impairments. Moreover, while Dr. Goolsby's report suggests more significant deterioration than does Dr. Webb's, the court believes that Dr. Goolsby's overall findings and assessment are more consistent with those of Dr. Webb than Dr. Seaton. Dr. Goolsby determined that Mrs. Jackson had experienced a single, severe major depressive episode. Dr. Goolsby observed that plaintiff had not previously been taking

5

appropriate medication, and he arranged for such medication through plaintiff's family physician. Dr. Webb saw plaintiff some months after Dr. Goolsby's treatment regimen was initiated. Furthermore, the court notes that Dr. Webb's findings are essentially the same as those offered by Dr. Joseph C. Cianciolo following a psychological evaluation in 2002. At that time, plaintiff was taking antidepressant medication. Dr. Cianciolo considered her depression to be situational in origin. In short, it appears to the court that there is substantial evidence upon which the Law Judge might reasonably determine to give greater weight to Dr. Webb's report than to that of Dr. Seaton.[2]

The court also agrees with the Administrative Law Judge's observation that Dr. Seaton's residual functional capacity findings are inconsistent with plaintiff's own description of her daily activities, as well as the clinical findings also reported by Dr. Seaton. While the medical record leaves no question that Mrs. Jackson's physical problems have worsened over the years, and that the degree of her depression is influenced by the progression of her physical discomfort, the court believes that the record supports the Law Judge's ultimate determination that Mrs. Jackson retained sufficient functional capacity to perform sedentary or light/sedentary work activity that does not involve exposure to stressful situations or more than limited social contact, at all relevant times prior to the date of the Law Judge's opinion. The court believes that the Administrative Law Judge properly included all of the physical and emotional limitations reasonably suggested by the medical record in a comprehensive hypothetical question propounded to the vocational expert. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). In response, the vocational expert identified a number of work roles which Mrs. Jackson could be

---

[2] On appeal to this court, plaintiff argues that Dr. Webb's report should be discredited because Dr. Webb was unable to obtain valid MMPI-2 results. The court is unaware of any requirement that conditions acceptance of a psychological report on the existence of valid MMPI results.

6

expected to perform, given her particular combination of physical and emotional impairments.[3] It follows that the Administrative Law Judge properly determined that Mrs. Jackson is not disabled within the meaning of the Act. See 20 C.F.R. §§ 404.1520(g) and 416.920(g). The court concludes that the final decision of the Commissioner is supported by substantial evidence and, therefore, that the final decision must be affirmed. See Laws v. Celebrezze, supra.

On appeal to this court, plaintiff submitted new medical evidence in the form of a psychological report prepared by Dr. Kirsten Plehn, on October 6, 2006. Also included is a medical statement of plaintiff's mental ability for work-related activities submitted by a psychotherapist and dated September 15, 2005. Mrs. Jackson now seeks remand of her case to the Commissioner for consideration of the new medical evidence.

In Borders v. Heckler, 777 F.2d 954 (4th Cir. 1985), the United States Court of Appeals for the Fourth Circuit summarized the standards under which a motion for remand must be considered as follows:

> A reviewing court may remand a Social Security case to the Secretary on the basis of newly discovered evidence if four prerequisites are met. The evidence must be "relevant to the determination of disability at the time the application was first filed and not merely cumulative." Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983). It must be material to the extent that the Secretary's decision "might reasonably have been different" had the new evidence been before her. King v. Califano, 599 F.2d, 597, 599 (4th Cir. 1979); Sims v. Harris, 631 F.2d 26, 28 (4th Cir. 1980). There must be good cause for the claimant's failure to submit the evidence when the claim was before the Secretary, 42 U.S.C. § 405(g), and the claimant must present to the remanding court "at least a general showing of the nature" of the new evidence. King, 599 F.2d at 599.

777 F.2d at 955.

---

[3] On appeal to this court, plaintiff argues that the findings of the Law Judge establish that she is unable to work without a "sit/stand option" and that the vocational expert did not indicate whether the jobs he had identified permitted such an option. The court finds that the vocational expert specifically testified that most sedentary assembly jobs permit the worker to sit or stand at will. (TR 117).

7

After consideration of the new evidence, the court must conclude that there is no "good cause" for remand of this case to the Commissioner for further development. In terms of the analysis established under Borders, the court notes that neither the new psychological report nor the medical source statement purport to describe plaintiff's condition during the period of time adjudicated by the Administrative Law Judge. As suggested in the summary of the medical record set forth above, Mrs. Jackson appears to suffer from a progressive condition. As her fibromyalgia worsens, her depression deepens. Nevertheless, as outlined above, the medical record developed during the period of time considered by the Administrative Law Judge establishes that Mrs. Jackson's condition had not deteriorated to such an extent as to prevent all forms of work activity. While it may be that she now is totally disabled, the new medical evidence sheds no light on her condition prior to the date of the Administrative Law Judge's decision. Furthermore, the court notes that Dr. Plehn's psychological study is not overly different from that submitted by Dr. Webb. In any event, the court concludes that Mrs. Jackson has not established "good cause" for remand of her case based on the new medical record. In such circumstances, plaintiff's proper course is to file new applications for disability insurance benefits and supplemental security income benefits.

In affirming the final decision of the Commissioner, the court does not suggest that Mrs. Jackson is free of all pain, discomfort, and emotional dysfunction. Indeed, the medical record, as well as plaintiff's own testimony, suggest a history of multiple medical impairments, progressively worsening pain, and situational depression/anxiety. On the other hand, the court must agree that the Law Judge's finding of residual functional capacity for sedentary/light work, with exposure to no more than low levels of stress and social contact, finds support in the medical record. It must be recognized that the inability to do work without any subjective complaints does not of itself render a claimant totally disabled. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996). It appears to the court that the

8

Administrative Law Judge considered all of the subjective factors reasonably supported by the medical record in adjudicating plaintiff's claims for benefits. Indeed, the court believes that the Law Judge was most thorough in evaluating plaintiff's nonexertional impairments. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra. An appropriate judgment and order will be entered this day.

The clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 27th day of July, 2006.

_____
United States District Judge